THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDY MOORE *et al.*, Defendants-Appellants.

First District (1st Division)   No. 81—2583

Opinion filed May 31, 1983.

Jayne W. Barnard and Michael Z. Margolies, both of Jenner & Block, of Chicago, for appellant Randy Moore.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant Carlos Daniels.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and James J. Bigoness, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, defendants Randy Moore and Carlos Daniels were convicted of three counts of armed robbery and armed violence. Moore was sentenced to 11 years and Daniels was sentenced to eight years in the Illinois Department of Corrections.

On appeal, Moore contends: (1) the trial court erred in denying his motion for severance; (2) the State's failure to produce a photograph requested by defense counsel constituted reversible error; and (3) the trial court erred in denying his motion to suppress in-court identifications made by complaining witnesses. Daniels contends (1) the trial court's failure to order a current presentence report entitled him to a new sentencing hearing and (2) his sentence is excessive.

We affirm.

The complaining witnesses Michael Wright, Alfreda Camel and Diane Blizzard testified to the following facts. On the evening of November 13, 1980, they went to the L & L Lounge. While walking home at about 4 a.m., defendants crossed the street and spoke to them. Moore was carrying a gun. Daniels told Moore to leave complainants alone and defendants left.

Shortly thereafter defendants again approached complainants. Moore aimed a gun at the victims and took Wright's wallet. Daniels held a knife to Diane's stomach and fondled her breasts. The assailants took the women's purses. Moore allowed Wright and Blizzard to leave, but grabbed Camel by her coat collar and began dragging her away.

Camel further testified that she was dragged to a nearby alley. Moore put the gun into her mouth, slapped her and threatened to shoot if she screamed. Moore and Daniels then took Camel to a school yard and defendants looked through the purses and the wallet. When they heard police sirens, Daniels jumped on the school roof and Moore ran. The police found Daniels on the roof.

Wright and Blizzard further testified that they phoned police from a nearby home. They rode through the area with police and found Camel running from the school yard. Later that morning, the police came to their home. They gave the officers Moore's address and a picture of Moore which was given to them by a friend. The police returned with Moore in custody and Wright and Blizzard identified him. They also identified him in a lineup conducted later that day.

Officer Frank Auginaga testified that he arrested Daniels on the roof of a school at 4:30 a.m. on November 14, 1980. One of the victims immediately identified defendant. Detective Cassidy testified that he spoke to Daniels at the police station. Daniels admitted committing the robbery at the urging of another person. Detective Bulava testified that Diane Blizzard identified Randy Moore in a lineup.

Officer John Kohles testified that he spoke to Wright and Camel on the afternoon of November 14, 1980. Wright gave him a photograph of Moore. Kohles went to 4356 West Congress Parkway, arrested Moore and returned to Wright and Camel's residence. He asked the victims to go to the police station. They walked past a squad car in which Moore was seated. Wright and Camel identified Moore.

Defendant Carlos Daniels testified that he and Moore participated in the offenses, but he was not aware that a robbery was occurring until Moore handed him something which he put in his pocket. Daniels admitted that he took Blizzard's purse. He further testified he had nothing other than a pen knife and Moore carried a toy B-B gun. When he heard the police sirens, he took a knife that was in one of the girl's purses and climbed onto the school roof.

Doris Moore, defendant Randy Moore's sister, testified that Randy resided with her and was home when she went to bed at 10 p.m. on November 13, 1980. He was also home when she arose at 5

a.m. the next day. Randy could not have left while she was sleeping because all the doors were locked and he did not have keys with which to open them.

■ On appeal, defendant Moore first contends the trial court erred in denying his motion for severance where he and Daniels had antagonistic defenses.

In support of a petition for severance, defendant is required to make a detailed recitation of his and his codefendant's defenses, the substance of the trial testimony, and the manner in which the defenses conflict. (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) The burden is on defendant to demonstrate prior to trial that a joint trial would be prejudicial and unfair. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903, 413 N.E.2d 1339.) A review of Moore's motion reveals no specific recitations, but rather only conclusory allegations that his alibi defense would be inconsistent with Daniels' trial testimony. Thus, there was no basis upon which the trial court could grant defendant's motion. Furthermore, the trial court stated that it would consider Daniels' testimony only against Daniels. Any prejudice which would have arisen by Daniels' testimony was thereby cured.

■ Second, Moore contends he is entitled to a new trial because the State failed to produce a photograph requested by him prior to trial and later offered the photograph into evidence. The photograph was initially offered during direct examination of Officer Kohles, who testified that he received the photo from Wright. Wright testified that he had described his assailant to a friend who then gave the photo to Wright. Defense counsel admitted that the State showed him the photograph immediately before trial and the photograph was listed in the State's answer to discovery.

Upon proper request, the State should produce photographs if it intends to use them at trial or if they are favorable to the defense. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121; 87 Ill. 2d R. 412(a)(v).) Here, the State's intent to use the photo is apparent since it was offered at trial and therefore the photo should have been produced at defendant's request. Nonetheless, where the admission of evidence causes no surprise or prejudice, a reviewing court will not reverse. (*Sakalas.*) Defendant cannot complain of surprise inasmuch as he was aware of the existence of the photograph for three months prior to trial. Moreover, defendant had the opportunity to cross-examine Wright and Camel regarding the circumstances surrounding their receipt of the photo. Considering this fact in conjunction with the positive in-court identifications made by the three complaining witnesses, we find that defendant was not substantially prejudiced by the delay

in tendering the photo. Furthermore, we may presume defendant was satisfied in proceeding with trial without additional time to investigate because he did not request a continuance. For this reason, too, defendant should not be heard to complain about the admission of the photograph. *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321; *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682.

■ Third, Moore contends the trial court erred in admitting the in-court identifications made by Wright and Camel. He maintains that the identifications were inadmissible because they were tainted by the suggestive showup.

The trial court suppressed evidence of the showup identifications, but found an independent basis for the in-court identifications. We agree with this ruling. An in-court identification is admissible if it is reliable. (*People v. Nolden* (1980), 91 Ill. App. 3d 532, 414 N.E.2d 1124.) Reliability is determined by considering the following factors: the witness' opportunity to view the criminal at the time the crime was committed, the witness' degree of attention, the accuracy of a description, the level of certainty demonstrated at the confrontation, the length of time between the crime and the confrontation, and any prior acquaintance with the suspect. (*People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) The most important factor is the victim's opportunity to view the perpetrator. (*People v. Sanders* (1976), 38 Ill. App. 3d 473, 348 N.E.2d 229.) The elements of reliability are to be weighed against the corrupting effect of the suggestive identification. *People v. Nolden* (1980), 91 Ill. App. 3d 532, 414 N.E.2d 1124.

The circumstances surrounding the incident, as testified to at trial, indicate that there was a reliable, independent basis for the in-court identifications made by Wright and Camel. The victims were approached twice by defendants. The second confrontation took place near a home that was well lit, the defendants were within arm's reach of the victims, and the incident lasted about five or 10 minutes. Furthermore, Camel had additional time in which to view defendants because she was taken to the school yard and held captive for several more minutes. The victims also identified defendant in a photograph given them by their friend only a few hours after the incident. In view of these factors, particularly the opportunity to view defendants at the scene of the crime, we find no error in the trial court's ruling.

Moore further contends that evidence of Blizzard's lineup identification should have been suppressed because the lineup was suggestive. However, defendant failed to raise the issue at trial and in his post-trial motion and thus the issue is considered waived. *People v.*

*Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.

■■ Defendant Daniels contends he is entitled to a new sentencing hearing because the trial court did not order a current presentence investigative report. The report considered by the court was prepared four months before the sentencing hearing, and Daniels contends that under *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, such report was inadequate.

Initially, we find that *Youngbey* is inapplicable to the case at bar. In *Youngbey*, no report was filed. The Supreme Court held the report was mandatory under section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—1) and could not be waived by defendant. Here, unlike *Youngbey*, a report was submitted to and considered by the trial court.

Furthermore, in *People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892, and *People v. Stahlman* (1982), 103 Ill. App. 3d 402, 431 N.E.2d 694, presentence reports prepared 10 months and 14 months prior to sentencing were found acceptable and any error in faling to order an updated report was considered waived by the failure to object to the use of the report. Here, defense counsel explicitly approved of the presentence report and cannot argue on appeal that the use of the report was error.

■■ Daniels also contends the trial court abused its discretion in imposing an eight-year sentence. The trial court noted that Daniels had shown contrition and did not have a criminal background, but found that the nature of the crime, and in particular, the fact that defendant had molested the female victim, warranted a sentence two years more than the minimum. The trial court may also consider the credibility, demeanor, general moral character, mentality, and habits of a defendant (*People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870) and is generally in a better position than this court to evaluate these factors. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) We have reviewed the record in this case and can find no abuse of discretion.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.