THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOMMIE L. HARRIS, Defendant-Appellant.

First District (3rd Division)   No. 84—0092

Opinion filed March 25, 1987.

Steven Clark and Julie B. Aimen, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Patrick Foley, and Thomas D. Bilyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant, Tommie Harris, was convicted of murder and sentenced to 20 years in the Illinois Department of Corrections. On appeal defendant argues (1) the evidence is insufficient to sustain a finding of guilty of murder; (2) the trial court abused its discretion and committed reversible error by denying defendant's motion for a new trial on the basis of newly discovered evidence; and (3) defendant was denied effective assistance of counsel. We affirm.

On May 7, 1982, around 7 p.m., the victim, Roger Cannon, defendant, and some other men were engaged in a dice game in a school yard parking lot at 8375 South Kerfoot Street, Chicago, Illinois. Defendant and Cannon became involved in an argument over a

bet made during the course of the dice game. The argument escalated into a fight which continued until it was broken up by some of the other men present. Defendant and Cannon then left the game. Shortly thereafter shots were fired, and defendant was seen driving away in his car. Cannon was found lying on the ground dead, the victim of two bullet wounds. Defendant was arrested in his car two days later. A 30-30 caliber pump action rifle containing four live rounds was retrieved from the trunk of defendant's car.

At trial, Darrell Handy testified that after the fight between defendant and Cannon ended, he was in his front yard playing with his son when he saw defendant carrying a rifle. Defendant walked toward the parking lot where the dice game and fight had occurred and then turned around and returned to his home. A few minutes later, Handy again saw defendant leave his house with a rifle in his hand. Handy testified that he heard screams and two or three gunshots.

Ira Hill testified that on May 7, 1982, around 7:30 p.m., he was sitting on his front porch talking with two friends, Gregory Thomas and Robert Maxwell. Hill saw defendant walk down the street with what appeared to be a rifle. Defendant approached Hill's station wagon, which was parked in front of the house, and walked alongside it. Hill then heard a gunshot and immediately ran into his house. Hill told the police investigating Cannon's death that he heard two or three gunshots.

Another State witness, George Brown, testified that he saw defendant sitting on his porch with what appeared to be a long pipe in his hands. Brown later saw defendant come out of his house carrying a rifle and walk down the street in the direction of Hill's house. Brown stated that he then heard a couple of gunshots and saw defendant run toward his car, throw the rifle in the backseat, and drive away.

George Bernard Brown (George Bernard) testified next for the State. George Bernard indicated that on the evening in question he was talking with Terry Brown and Roger Cannon in front of Terry Brown's house. George Bernard stated that they all walked across the street to find George Brown, Terry Brown's brother, so he could give Cannon a ride home. At that point, George Bernard saw defendant coming down the street with a rifle in his hands. George Bernard stated that when defendant reached the area by the blue station wagon parked in front of Hill's house, he pointed the gun at Cannon and shot him. George Bernard was 5 or 6 feet away from Cannon at the time. George Bernard then ran to the fence behind the parking lot of the school. Once there, he turned to see Cannon trying to pull him-

self under Hill's car and then saw defendant shoot Cannon again. George Bernard testified that he heard two gunshots fired prior to when he climbed over the fence and a third shot once he was over the fence and down the hill. On cross-examination George Bernard indicated that he never saw Cannon with a gun in his possession on the day in question.

Barbara Handy also testified for the State. Barbara indicated that at the time of the shooting she lived in a house across the street from defendant's house. She related that she was present when her husband broke up the fight which occurred between defendant and Cannon. Barbara further testified that defendant walked by her on the way home from the dice game and stated that he was going to "[k]ill a son-of-a-bitch." Barbara testified that she heard a total of three gunshots.

Rosemary Cannon, the victim's sister, also testified that she was present when defendant shot Cannon. She indicated that she saw defendant approach Cannon with a rifle in his hand, heard a gunshot, and then saw Cannon fall. Rosemary then yelled at defendant to stop, but then heard two more shots. She saw nothing in Cannon's hands.

Terry Brown was the last eyewitness to the shooting to testify on the State's behalf. Terry's testimony was virtually identical to that of George Bernard. Terry, however, further stated that as he and Cannon neared Ira Hill's car, he saw that defendant had a gun. Terry then yelled to Cannon, 'Roger, he's got a gun." Terry indicated that Cannon then looked at him, a shot was fired, and Cannon fell to the ground. As Terry ran to his house, he heard two more shots fired. Terry stated that he never saw a gun in Cannon's hand.

Officer John Ryan of the Chicago police department testified next for the State. He testified that he arrived at the scene almost immediately after the shooting. He observed a bullet wound to the left side of Cannon's face and a bullet wound to the left side of his body. He further testified that he found two 30-30 caliber shell casings by Hill's station wagon.

Officer Charles Grunhard was the final witness to testify for the State. Grunhard indicated that two days after the shooting he arrested defendant in his car. He stated that defendant voluntarily retrieved a 30-30 caliber pump action rifle with four live rounds in it from the trunk. On cross-examination, Officer Grunhard stated that the gun was capable of holding a total of seven rounds.

Defendant called Reggie Amos as his first witness. Amos testified that he was present when the fight broke out between defendant and Cannon. Amos indicated that after the fight, Cannon turned to

defendant and said, "Man, you're dead. I'm going to kill your wife and kids, and your house is going off the map." Defendant and Cannon then left the game. A short time later, Cannon returned to the game with Terry Brown and George Bernard Brown. Amos stated that it was then that he noticed what appeared to be the outline of a gun in one of Cannon's pockets. Amos could not remember in which pocket he saw the outline. Cannon, Terry, and George Bernard then turned away and walked back toward Terry's house. Amos then heard a gunshot and saw Cannon fall. Amos then heard four softer shots, followed by one louder shot. On cross-examination, Amos stated that he did not tell the police about the outline of the gun he saw in Cannon's pocket because he feared gang retaliation.

Robert Beseth testified next for the defense. Beseth stated that he is a private investigator employed by John McKinley, Special Services, Lombard, Illinois. Beseth was hired by defendant to conduct an investigation of the shooting. Pursuant to that investigation, Beseth went to South Kerfoot Street to examine the scene for bullets. He found several bullet holes in the side of a house at 8356 South Kerfoot Street. He examined the one bullet hole that he was able to reach. Beseth removed two lead fragments from the hole. Photographs of the holes and the fragments were admitted into evidence. It was stipulated that the fragments were turned over to Joseph Nicol, a firearms examiner, who, if called to testify, would state that the fragments were from a .38 caliber weapon.

Michael Handy also testified for the defense. Handy related that following the argument between Cannon and defendant, Cannon made repeated threats against defendant. Handy stated that while he was standing in front of his brother Darrell's house, he saw Cannon, George Bernard, and Terry Brown walking down the street in the direction of where defendant was standing. According to Handy, the next thing he saw was Bernard Brown and Terry Brown running away and Cannon going in his pocket, pulling out a gun, and firing it at defendant. Handy heard five gunshots. Handy then saw Cannon lying on the ground, and he saw an unidentified person walk up to him. On cross-examination, Handy testified that he saw Cannon pull a gun from his right pocket. He further testified that he heard the rifle fire two or three times after he heard five different gunshots. He could not distinguish who fired first.

Catherine Stern testified that she heard a total of four gunshots. The first two gunshots sounded like firecrackers, and the last two shots were heavier. Stern was unable to remember if the last gunshot was louder than the third.

Defendant testified that during the course of the dice game he and Cannon became involved in a verbal altercation which ended when defendant hit Cannon and knocked him to the ground. Michael Handy, Terry Brown, and Darrell Handy broke up the fight. Thereafter, defendant and Cannon shoved each other a few times before defendant left the game. Defendant stated that as he was walking home he heard Cannon yelling after him that defendant and his family were dead. Defendant then saw Cannon make what he believed to be a gang gesture by crossing his arms, hitting his chest while bending down, and stating, "Kill, kill."

Defendant further testified that when he arrived at his house, he went upstairs and got his rifle, loaded it with six rounds, returned downstairs, and set it in the living room near the front porch. Defendant then went and stood on his front porch. There he saw Cannon, Terry Brown, and another individual walking down the street toward his house. Defendant saw Terry Brown point at him, and he then saw Cannon step out onto the sidewalk and pull a bluesteel, white handled revolver from his pocket. Upon seeing Cannon pull a gun, defendant grabbed his gun through an open living-room window and ran to his car for cover. Defendant then ran south down the street toward Cannon, who defendant claims was also running south. Cannon then crossed the street and continued running south. When defendant was approximately halfway to Hill's station wagon, Cannon turned and fired two shots. Defendant stated that once behind Hill's car, he attempted to fire at Cannon but could not because he had not chambered a bullet. Thereafter, defendant chambered a bullet, stood up from behind the car, and shot Cannon. Defendant saw Cannon slump over, but then Cannon got up and fired four more shots at defendant. Defendant stated that he fired one more shot and then saw Cannon fall. Defendant cocked the gun to discharge the spent round, and he then ran to his car and drove away. On cross-examination, defendant stated that Cannon pulled the gun from his left pocket and shot the gun with his left hand.

On rebuttal, the State recalled Rosemary Cannon to testify. She stated that Cannon was right-handed. It was then stipulated that if called to testify, Chicago police officer Jo Ann Ryan would testify that no handgun was ever recovered from the scene of the shooting.

■ Defendant initially argues that his conviction must be reversed because the evidence shows that he acted in self-defense. The general rule as to defense of a person is set forth in section 7−1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7−1):

"A person is justified in the use of force against another when

and to the extent that he reasonably believes that such conduct · is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Self-defense is an affirmative defense. (Ill. Rev. Stat. 1979, ch. 38, par. 7—14.) To be properly raised, at least some evidence of self-defense must be introduced at trial. (*People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012, 1017.) Once the defense is raised, the State must prove beyond a reasonable doubt that a defendant did not act in self-defense, in addition to proving beyond a reasonable doubt the other elements of the offense with which a defendant is charged. Ill. Rev. Stat. 1979, ch. 38, par. 3—2; *People v. Balfour* (1986), 148 Ill. App. 3d 215, 221.

■■ ■ The utilization of self-defense is justified only where (1) force is threatened against the person, (2) the person threatened is not the aggressor, (3) the danger of harm is imminent, (4) the force threatened is unlawful, (5) the person threatened actually believes: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, and (c) that the kind and amount of force used are necessary, and (6) that such beliefs are reasonable. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 221.) Moreover, the use of deadly force in the defense of a person is limited to those situations in which the force threatened will cause death or great bodily harm or the force threatened is a forcible felony. (*People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012, 1017.) The issue of self-defense is a question of fact to be resolved by the trial court. If the trier of fact determines that the State has negated beyond a reasonable doubt any one of the elements justifying the use of force, then the State has carried its burden of proof and the defense must be rejected. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 222.) On review, the decision of the trial court regarding the issue of self-defense will not be disturbed unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. *People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012, 1017.

■■ ■ It is apparent to us that the issue of self-defense can be predicated only upon defendant's claim that Cannon was armed. This claim is based upon (1) the testimony of defendant and two witnesses that Cannon was armed and (2) the testimony of defendant that he fired only two shots, although several witnesses testified that they

heard three or more shots. It is undisputed that no weapon was retrieved from the scene of the shooting. While the absence of a weapon is not determinative of the issue of self-defense (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 223), here it is the only basis upon which defendant rests his claim. A trier of fact is under no obligation to believe an accused's exculpatory testimony. Rather, the credibility of witnesses is primarily a question for the trier of fact, and the resolution of such a question will not be upset on appeal even where the evidence is conflicting. *Perschall v. Raney* (1985), 137 Ill. App. 3d 978, 484 N.E.2d 1286, 1291.

■ Here, the testimony concerning whether or not Cannon was armed was extremely conflicting. Three occurrence witnesses, George Bernard Brown, Terry Brown, and Rosemary Cannon, all testified that Cannon was unarmed. Moreover, none of the State's witnesses indicated that they saw Cannon with a gun. Defendant, Michael Handy, and Reggie Amos were the only defense witnesses who testified that Cannon was armed and had attempted to kill defendant. Handy testified that he saw Cannon pull a gun out of the right pocket of his pants with his right hand and fire at defendant. Defendant, however, related that he saw Cannon pull the gun out of his left pocket, with his left hand, before he fired at defendant.

Finally, we do not believe that the testimony regarding the number of shots fired established that Cannon was armed. Although defendant testified that he fired only two of the eight shots exchanged between himself and Cannon, and Amos and Handy both stated that they heard five shots fired, witnesses for the State testified that a total of only two to three gunshots were heard. Clearly, the trial court found the State's witnesses to be more credible, and we see no reason to disturb this determination.

With respect to the number of shots fired, defendant further argues that the testimony that he only fired two shots is uncontroverted. We disagree. The record reflects that testimony was introduced which indicated that defendant's rifle was capable of holding seven shells, and only four shells were in the rifle at the time defendant was arrested. Therefore, it is possible that defendant may have fired the three shots Darrell Handy, Barbara Handy, Rosemary Cannon, and George Bernard testified that they heard.

Defendant also relies on the fact that bullet fragments from a .38 caliber revolver were found in a hole in the side of a house at 8356 South Kerfoot Street to support his contention that Cannon was armed. Such reliance is misplaced. No evidence was ever introduced at trial indicating how long the fragments had been in the side of the

house before they were retrieved. Nor was any evidence introduced in explanation of why only that particular hole was examined as opposed to any of the other holes present, other than the fact that defendant's wife had pointed out that particular hole and that it was easily accessible. Moreover, our examination of the record provides us with no affirmative linkage of the fragment recovered to the shooting at issue here.

■ As an alternative argument, defendant contends that the evidence only supports a finding of voluntary manslaughter. Defendant argues that because Cannon made what he believed to be a gang symbol and threatened to kill defendant and his family, defendant formed an actual but unreasonable belief that he had to shoot Cannon. According to defendant, while this fear may have been unreasonable, it supports his contention that he subjectively believed that both he and his family were in danger. We find no merit in defendant's argument.

A person commits the offense of voluntary manslaughter if he kills an individual without lawful justification while under a sudden and intense passion resulting from serious provocation, or if he intentionally or knowingly kills an individual believing the circumstances justify or exonerate the killing, but the belief is unreasonable. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(a)(1), (b).) Whether a homicide is murder or manslaughter, or whether it is justified as self-defense, is a question of fact to be determined by the trial court. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 223.

The evidence adduced at trial indicated that at the time of the shooting, defendant did not know Cannon. Moreover, to the best of defendant's knowledge, Cannon neither knew where defendant lived nor that defendant had a family. Yet, when defendant saw Cannon walking down Kerfoot Street in the direction of defendant's house, defendant left his porch with a rifle, ran after Cannon, who attempted to flee, and shot him. We believe that such evidence supports a finding that defendant did not have a subjective belief that the force he used to defend himself against Cannon was necessary. Such a determination is consistent with a finding of murder as opposed to a finding of voluntary manslaughter. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 224.

■ Defendant alternatively contends that he shot Cannon while acting under a sudden and intense passion resulting from their earlier fight. Initially, we reject defendant's argument that this case is similar to *People v. Hudson*, (1976), 71 Ill. App. 3d 504, 390 N.E.2d 5, where a conviction for murder was reduced to voluntary manslaughter because the trial court found that there was no pause in the com-

bat between the defendant and the decedent, which indicated that a sufficient period of time to cool defendant's passions had not elapsed. In *Hudson*, the court emphasized that what constitutes a sufficient cooling-off period depends upon the magnitude of the provoking act and the degree to which passions have been aroused in the defendant. (71 Ill. App. 3d 504, 511, 390 N.E.2d 5, 10.) Here, the evidence established that the fight between defendant and Cannon consisted almost entirely of pushing and shoving. The only evidence of any substantial physical contact occurred when defendant punched Cannon, knocking him to the ground. Thereafter, only a few more shoves were exchanged. Defendant then went home and remained there for 5 to 15 minutes, during which time he talked to his wife and informed her that nothing was wrong. Defendant later saw Cannon walking down the street, chased after him, and then shot him to death. We do not believe that such evidence supports defendant's contention that at the time of the shooting he was acting under a sudden and intense passion as a result of an argument that occurred earlier in which defendant clearly had the advantage. We, therefore, do not believe that the evidence here requires us to reduce defendant's conviction for murder to voluntary manslaughter.

■ Defendant next contends that the trial court abused its discretion by denying his motion for a new trial based on newly discovered evidence. We disagree. To warrant a new trial, the evidence must have been discovered since the time of the trial and be of such character that it could not have been obtained by the exercise of due diligence prior to trial. The evidence must also have sufficient probative force or weight to raise a strong probability that a different result would be reached on retrial. Therefore, the evidence must be material to the issues and not merely cumulative. (*People v. Nolden* (1980), 91 Ill. App. 3d 532, 542, 414 N.E.2d 1124, 1132.) It is the applicant's burden to show that there has been no lack of due diligence on his part. The decision to grant or deny a motion for a new trial is largely discretionary with the trial court and will not be disturbed except in the case of manifest abuse. 91 Ill. App. 3d 532, 542, 424 N.E.2d 1124, 1132.

■ Defendant first argues that his newly discovered evidence is material and noncumulative and of such character that it could have changed the result of his trial. We disagree. The newly discovered evidence consisted of the testimony of three witnesses, John Sanders, Rennard Westley, and Twana Amos. All three witnesses testified regarding the number of gunshots they heard fired. Amos and Westley also stated that Cannon was firing at defendant with a black hand-

gun. Sanders related that his son had found a .38 caliber handgun shell near Cannon's body. Sanders then stated that he saw a handgun near the body. Amos also testified that she was on the Harris' porch at the time of the shooting with Pamela Harris and Pamela's mother. While there, she saw Cannon shooting at defendant. All three witnesses stated that they did not come forward with this information because they were not asked.

The totality of this evidence consists merely of testimony which is both internally conflicting and inconsistent with the testimony offered by defendant and the other witnesses. While this testimony may have impeachment value in the sense that it affects the credibility of certain State witnesses, it is utterly lacking the probative force or weight we believe would be necessary to produce a result different from that obtained at the trial. Newly discovered evidence which merely has the effect of impeaching, discrediting, or contradicting a witness does not afford a basis for a new trial. (*People v. Nolden* (1980), 91 Ill. App. 3d 532, 542, 414 N.E.2d 1124, 1132.) Under these circumstances, we conclude that defendant has not met his burden of rebutting the correctness of the trial court's decision. We, therefore, find no error in the trial court's denial of defendant's motion for a new trial. As a result, we need not address whether or not the testimony of Sanders, Westley, and Amos could have been obtained by the exercise of due diligence prior to trial.

■■ Finally, defendant argues that he was denied effective assistance of counsel because his attorney failed to discover the testimony of Twana Amos, John Sanders, and Rennard Westley until after trial. Representation by counsel is constitutionally deficient if the incompetence produced substantial prejudice to the defendant without which the results probably would have been different. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 227.) A determination of the competency of a defendant's counsel should not focus solely on isolated instances during trial, but, rather, should consider the totality of the circumstances surrounding the trial. Effective assistance of counsel is not synonymous with perfect representation. (148 Ill. App. 3d 215, 227-28.) Therefore, in order for defendant to prevail on his claim, he must show that his counsel was actually incompetent in the performance of his duties as a trial attorney in defendant's case. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 493-94, 445 N.E.2d 795, 802.) Defendant must also show that the incompetence was sufficient to affect the outcome of the trial. *People v. Taylor* (1982), 110 Ill. App. 3d 1140, 1145, 443 N.E.2d 699, 703.

■■ In view of our determination that the evidence which

defendant's attorney allegedly failed to discover is utterly lacking the probative force or weight necessary to produce a result different from that obtained at trial, we find defendant's argument to be without merit. Moreover, our examination of the record reflects that defense counsel presented an able defense of defendant through his examination of defendant and the witnesses, his cross-examination of the State's witnesses, and the making of appropriate objections where necessary. Under the totality of the circumstances, we conclude that defendant received effective assistance of counsel.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and FREEMAN*, J., concur.

---

*Justice McGillicuddy heard oral arguments in the above case prior to her retirement. Since that time, Justice Freeman was designated the third member of the panel and has read the briefs.