The People of the State of Illinois, Plaintiff-Appellee, *v.* Melvin O. Street (Impleaded), Defendant-Appellant.

(No. 53509;

First District—June 18, 1971.

*Rehearing denied July 8, 1971.*

Gerald W. Getty, Public Defender, of Chicago, (William J. Martin, James B. Haddad, and Theodore A. Gottfried, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Anthony N. Montemurro, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

A jury found the defendant guilty of the offense of armed robbery. He was sentenced to a term of ten to twenty years.

On appeal, defendant contends:

(1) that he was not proved guilty beyond a reasonable doubt;

(2) that the trial court erred in denying his request for a continuance to secure additional witnesses; and

(3) that the trial court erred in admitting an in-court identification and a statement made by the defendant who had not been advised of his right to have counsel at a line-up.

Warren Blackman testified for the State. He is part owner of a gas station at 618 South Ashland Avenue in Chicago. At 8:00 P.M. on September 25, 1967, he locked the station for the night. As he walked to his car, a white man, later identified as Rimanich, appeared and told him "this was a hold up." This man carried a shopping bag containing a gun which he pulled out for Blackman to see. Two passers-by, Grafton Walls and Charles Knowles happened upon the scene and Rimanich told them to "join the party." All went back inside the station. Rimanich took the nineteen dollars Blackman had in his pocket and locked Walls and Knowles in the washroom. A Negro came into the station. Rimanich stated to him that Blackman was "clean." Rimanich also stated "There's only four dollars left in the drawer, in the trunk." Blackman first said the four dollars was taken by Rimanich but then said it was taken by Street. However, he stated that he didn't actually see the defendant take anything. The lighting conditions were good and he had two or three minutes to get a look at defendant's face. After the robbers left, Walls and Knowles hailed a police car and gave a description to the police officers. Blackman did not give a description to the police. The policeman read to him the description given them by Walls and Knowles and they talked about it. Later that night he was told that the police had caught the fellow and that he should come to the Racine Station. At the Racine Station he was told by the Police that they had the robbers and that the description given fit pretty close. Then the police had two line-ups, the first with four white men, the second with four Negroes. He identified Rimanich and defendant in the line-ups.

Grafton Walls testified for the State that he and his friend Knowles went to the gas station to talk to Blackman about a tire. Blackman was standing with another white man near his car and the other man told

them to "join the party." The man had a gun in a blue and white striped bag and told them they were all going inside, "This is a stick-up." Walls and Knowles were ordered into the washroom. A few minutes later Blackman was sent into the washroom and the door was closed on the three of them. Shortly thereafter they came out of the washroom and hailed a passing police car. He later went to a line-up at a police station where he identified the white man, Rimanich.

Raymond Hutton, a Chicago police officer, testified for the State that he stopped a car for a traffic violation at 11:00 P.M. on the night of September 2, 1967. Defendant was the driver of that car. He was accompanied by two passengers; one, a male Negro, was in the front seat; the other, a white male, was in the rear. The Negro passenger left to get cigarettes and did not return. When the witness' partner inspected the rear seat of the vehicle he discovered a .30 caliber carbine in a green and white striped bag. This package was within easy reach of the passenger in the rear seat who was later identified as Rimanich. The officers noted that Rimanich matched a description given in a city-wide alert which described a white male with a machine gun in a green and white striped bag sought in connection with an armed robbery. A search of the defendant and Rimanich revealed no unusual quantity of change.

Detective Edmund Butz of the Chicago Police Department testified for the State. He stated that defendant at first declined to make a statement, but later remarked: "Ain't this a shame? That was supposed to be a five thousand dollar score, and we only got nineteen dollars out of the robbery." A police report indicated nineteen dollars in currency and four dollars in change was taken during the robbery. Before conducting the line-up he told Blackman that two men were in custody in connection with the robbery. Blackman then remembered the presence of a second robber. Butz did not question defendant in an interrogation room.

Melvin Street testified on his own behalf. He first met Rimanich approximately one month prior to his arrest. Before 7:00 P.M. on the evening of September 25, 1967, Rimanich came to Street's residence for dinner. At that time Rimanich carried a green and white striped bag. During dinner Rimanich asked defendant to help him move. Defendant was going to try to borrow a car and help Rimanich. Approximately 9:00 P.M. defendant made telephone contact with a Mr. Huron, a security officer of the University of Chicago, who consented to let defendant borrow a car. About 9:30 that evening defendant got the car and picked up Rimanich. Rimanich, carrying a green and white striped bag, was accompanied by a Negro friend whom defendant had never seen before. They drove some distance to a house which Rimanich and his friend entered carrying some of Rimanich's clothing. On the return trip they

were stopped for a traffic violation. Rimanich's friend was allowed to leave the car to get a package of cigarettes but he never returned. One of the officers went to the car and returned carrying a bag which contained a gun. At the time of his arrest defendant had no change but about eight or nine dollars in currency on his person. At the police station he was questioned by Detective Butz in an interrogation room. Prior to the line-up in the police station defendant saw Butz, Blackman, Walls and Knowles standing near a desk. Butz pointed to defendant saying "That's the man." Defendant was then placed in a line-up with two policemen. A third line-up was conducted for a person unknown to defendant. This person told the police that defendant was not at the scene of the robbery. Defendant denied all knowledge of the crime as well as participation in it.

Mary Kay Hubbard testified for the defense that she was living with defendant at the time of his arrest. On her way home from work on the evening of September 25, 1967, she stopped at a grocery store when she met Rimanich who wanted defendant to help him move. After inviting Rimanich to dinner she went home. Between 6:00 and 6:30 defendant arrived. Shortly thereafter Rimanich came carrying a green striped bag. He stayed approximately forty-five minutes. At 7:45 P.M. defendant went downstairs to make a phone call and returned ten or fifteen minutes later. Defendant left the apartment about 9:00 P.M.

■■ Defendant's first contention is that because his identification was doubtful, vague and uncertain the State failed to prove him guilty beyond a reasonable doubt. Defendant argues that the fact that Blackman failed to describe a Negro robber when he spoke with the police officers immediately after the robbery indicates that the identification of defendant at the line-up was a result of police suggestion. We do not find defendant's argument persuasive. The testimony of the State's witnesses indicates that the description of the robber given to the police officers at the filling station was provided by Walls and Knowles, who had seen only Rimanich before they were confined to the washroom for the duration of the robbery. Shortly after Walls and Knowles spoke with the officers, the officers spoke briefly with Blackman who confirmed the accuracy of the description of Rimanich supplied by Walls and Knowles. None of this is inconsistent with Blackman's subsequent identification of defendant as a participant in the robbery nor does it imply that the identification was the result of any police persuasion exercised upon Blackman.

Additionally, defendant argues that Blackman's testimony was hesitant and equivocal. Close examination of the record reveals that Blackman's testimony was consistent, that he specifically identified defendant as the Negro who participated in the robbery, and that his testimony was

unshaken under cross-examination. These alleged discrepancies were brought out before the jury whose function it was to determine the credibility of the witness. (See *People v. Hampton* (1969), 44 Ill.2d 41 at 45.) Finally, defendant's oral admission, testified to by Officer Butz, was submitted to the jury and is corroborative of defendant's identification as the second robber. See *People v. Lawrence* (1968), 102 Ill.App.2d 176.

■■ Defendant's second contention is that the trial court erred in admitting an in-court identification and a statement made by defendant immediately after the line-up because he had not been advised of his right to have counsel at the line-up. The line-up in issue was conducted approximately four hours after the robbery. No indictments had then been returned and according to the evidence presented at trial the police had little reason to suspect defendant's participation in the robbery until Blackman arrived at the police station to view the line-up and stated the involvement of a Negro in the robbery. Thus, this line-up clearly does not amount to that "critical stage of the prosecution" described in *United States v. Wade*, 388 U.S. 218, and *Gilbert v. California*, 388 U.S. 263, upon which defendant relies in this contention. We believe that the dispositive Illinois decision is *People v. Palmer* (1969), 41 Ill.2d 571, in which the court discussed at page 572 the *Wade* and *Gilbert* cases.

> "Each of those cases involved a line-up proceeding which was conducted after the defendant had been indicted and after counsel had been appointed for him. In each case the defendant's attorney was not notified of the line-up and was not present. The Supreme Court held that the line-up was a critical stage of the proceedings and that defendant was entitled to the presence of counsel. In our opinion these 'line-up' decisions apply only to post-indictment confrontations."

We find no error in the admission of the evidence complained of.

Defendant's final contention is that he was denied a fair trial by the refusal of the court to grant a continuance. The trial was begun on Monday, April 22, 1968, when the jury was sworn and the testimony of Blackman was presented. At 2:00 P.M. on April 22 the court recessed the trial to the next morning because of other matters before the court that afternoon. At noon on the 23rd the record reflects the following:

> "THE COURT: We'll recess for lunch. Do not discuss the case amongst yourselves. I don't know if we'll have to adjourn early today or not. I haven't found out if there is any other activity in our courtroom  *  *  *."

In the afternoon court convened at 1:15. After the presentation of testimony of Officer Butz and Mary Kay Hubbard defense counsel stated that

he had further evidence but would not be able to bring his witnesses in that day and moved for a recess. The court denied the motion. The court then asked if the State had rebuttal witnesses and, upon hearing that none were to be offered, declared that both prosecution and defense rested and that final arguments would begin in ten minutes. Defense counsel's repeated motion for a continuance was denied and he was refused an opportunity to make an offer of proof. After the final arguments were concluded the court recessed the trial to the next morning for the conference on instructions.

■■ The State argues that the granting of a continuance is within the discretion of the court and asserts that the trial judge in the instant case properly denied the motion for a continuance. It is true that the granting of a continuance is within the sound discretion of the court.

Chapter 38, section 114—4 (b) (3) of the Illinois Revised Statutes of 1967 provides:

> "A motion for continuance made by defendant more than 30 days after arraignment *may be granted* when:
> * * * A material witness is unavailable and the defense will be prejudiced by the absence of his testimony; * * *." (Emphasis added.)

The statute has uniformly been held to place the disposition of a motion for continuance within the sound discretion of the court. See *People v. Davis* (1970), 45 Ill.2d 514; *People v. Kees* (1965), 32 Ill.2d 299.

■■ It is also said, however, that whether there has been an abuse of discretion in denying a motion for continuance depends upon the particular facts of each case. (See *People v. Bond* (1968), 99 Ill.App.2d 45.) We must agree with defendant that the record in the instant case does not indicate the exercise of a sound discretion. The time schedules enunciated by the court were indefinite and therefore defendant should have been granted some leeway in bringing in his witnesses. Further by refusing counsel an opportunity to present his offer of proof the court denied itself the data which it required in order to exercise an informed discretion.

■■ Though it is fruitless in the absence of the offer of proof to speculate upon the probable testimony of witnesses which the defense sought to place before the court, it must be noted that the defense had presented alibi evidence and that the testimony of police officer Hutton included mention of a second Negro who was in the auto when Rimanich and defendant were stopped for a traffic violation. Defendant had also testified that at approximately 9:00 P.M. Huron, the University of Chicago security officer, was lending defendant his car. The production of Huron's testimony to this effect could thus have corroborated defendant's alibi.

Thus the trial judge should have been aware of possible avenues of defense which could have been the objects of further vital evidence. In *People v. Blumenfeld* (1928), 330 Ill. 474, the Court said at 489:

> "While it is highly important that justice should be speedily meted out and that criminals should be punished with celerity and dispatch, it is much more important that before punishment should be inflicted upon a person accused of crime full opportunity should be given to place the court in possession of all the facts bearing upon the question of the guilt or innocence of the accused, so that the court and jury may ascertain the truth as to whether or not the person accused is, in fact, guilty of the crime."

We conclude that the court failed to properly exercise its discretion in denying defendant's motion for a continuance and for that reason the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.

ENGLISH, P. J., and DRUCKER, J., concur.