THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL MARTIN, Defendant-Appellant.

First District (3rd Division)    No. 79-1168

Opinion filed October 28, 1981.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Michael Martin, guilty of involuntary manslaughter in connection with the death of George Obee, the owner of a funeral home in Chicago. He was sentenced to an extended term of 10 years, and he appeals.

On appeal the defendant contends that the trial court erred (1) in denying his motion to quash his arrest; (2) in barring certain testimony of a defense witness; (3) in allowing the State to cross-examine a defense witness about a prior conviction; (4) in allowing the State to introduce extensive evidence concerning the homicide investigation; and (5) in imposing an extended term sentence.

Prior to trial a hearing was conducted on defendant's motion to quash his arrest and suppress certain evidence. At the hearing Sylvester Martin, the defendant's father, testified that on August 1, 1977, he was sitting in his car in front of his residence. The defendant approached him and stated that he wanted the car. When he refused to give the car to the defendant, an argument ensued. The defendant struck Sylvester, and Sylvester struck the defendant. Subsequently, the police arrived and arrested the defendant. Sylvester neither asked the police to press charges nor signed a complaint.

The defendant testified that he was arrested for disorderly conduct. Two police officers took him to a police station where he remained overnight. The following morning the defendant was taken to a holding room to appear before the judge. Before he appeared in court, the defendant was taken downstairs and interrogated concerning another matter.

Counsel asked the defendant whether at the time of his arrest he had any money on his person to make bond. The State's objection to this question was sustained.

Officer Artis Jenkins of the Chicago Police Department testified that on August 1, 1977, at approximately 5:15 p.m., he and his partner observed a fight involving the defendant and his father in the vicinity of 4700 S. Wabash Avenue. A group of people had gathered on the corner. Jenkins saw the defendant throwing punches at his father. The officers intervened and separated the two men. Sylvester Martin signed a disorderly conduct complaint against his son; however, Jenkins did not know where the complaint was at the time of the hearing. An unidentified man on the street corner told Jenkins that the defendant "was wanted on

something big that happened on Indiana near 51st Street." Obee's funeral home was located at 5039 S. Indiana.

Jenkins and his partner took the defendant to the police station, and Jenkins contacted homicide investigators. Jenkins testified that the court call on the charge against the defendant was set for 9:30 a.m. the following morning.

After hearing the evidence, the trial court held that the arrest was legal, that the detention and interrogation were permissible, and that the evidence seized was admissible. Accordingly, the court denied the defendant's motion.

At trial, Richard Alexander, a part-time police officer for the Village of Moline in Will County, Illinois, testified that on July 24, 1977, he and his partner met with a local resident at the intersection of the Manhattan-Monee Road and Interstate Route 57. The resident directed the officers to the body of an elderly man located in a ditch alongside the road. A wallet in a suit coat found near the victim contained cards and papers belonging to Obee.

Sergeant John Watters of the Will County sheriff's police was assigned to the homicide investigation. On July 24, 1977, he and Investigator Robert Pedersen went to the area where Obee's body was lying. Watters noticed severe abrasions on the forehead and face of the victim.

Later that afternoon Watters interviewed Lawrence Travis and Mandell Durell, a nephew of the decedent, at the Joliet police station. Watters obtained from Travis keys to a limousine which was parked in the police parking lot. He noticed a red fluid substance on the taillight assembly and inside the trunk of the vehicle.

Subsequently, Watters spoke to Investigator Laverty of the Chicago Police Department. Then, he placed Travis under arrest. Watters and Pedersen escorted Travis to Chicago that evening. Watters conducted several interviews and again spoke to Travis at 4:30 a.m.

On August 1, 1977, at approximately 6:30 p.m., Watters received a phone call from Laverty. The following morning he and Pedersen went to Chicago and spoke to Laverty. They subsequently went to a branch court lockup and interviewed the defendant. After the defendant was advised of his constitutional rights, he made the following oral statement.

On July 20, 1977, the defendant met Travis at the home of Ike Lee. Travis told the defendant that he had worked for Obee since he was 14 years of age, that Obee considered him "like a son," that Obee was extremely wealthy, and that Travis was dissatisfied with the manner in which Obee had been treating him. Travis told the defendant that he would inherit all of Obee's money. Travis further stated that he once paid a man $20,000 to kill Obee, but the murder did not occur.

On July 22, Travis, Ike Lee and the defendant met in Travis' room in

the lower level of the funeral home and discussed killing Obee. Travis offered Lee a Cadillac and $2,000 to murder Obee; however, Lee would not do it alone. Travis offered the defendant $5,000 to assist Lee. The defendant stated that he would have to receive $10,000 in cash.

The following morning Travis called the defendant and informed him that he had the necessary money. Subsequently, Lee brought a .45-caliber handgun to the defendant's home. Lee and the defendant met Travis at the funeral home and went to Travis' room. Travis was sitting in a chair, Lee was sitting on the bed, and the defendant was standing in the middle of the room with the gun in his hand. Obee appeared at the door, and the defendant turned and fired a shot which struck Obee in the abdomen. The defendant insisted that the gun went off accidentally. At this point, Travis grabbed the gun from the defendant and fired several shots into Obee's body.

The following morning Travis gave the defendant three checks payable to Obee and a television set. The defendant burned the checks and sold the television set.

Investigator Robert Pedersen, a deputy sheriff of Will County, also testified concerning the investigation of the homicide and the defendant's confession. At one point he mentioned that on July 25, 1977, he and Watters went to 33 E. 47th Street in Chicago (the defendant's address).

Frank Lee testified that on July 23, 1977, Lawrence Travis arrived at Lee's home in Chicago. Subsequently, Lee and Travis left the building and entered a limousine. While Travis was driving, Lee fell asleep. When Lee awoke, Travis had stopped the vehicle somewhere in the country. Travis got out of the car, opened the trunk, and threw out a body.

Dr. Edward Shalgos, formerly a pathologist with the Cook County Coroner's office, performed an autopsy on Obee. Dr. Shalgos described heavy abrasions which were present on Obee's head and face. Dr. Shalgos testified that the trauma which caused these abrasions was applied prior to Obee's death.

Dr. Shalgos further testified that his examination revealed 14 bullet penetrations. The bullet which caused Obee's death entered his body through the back and slashed the aorta, causing major internal bleeding.

Ike Lee testified on behalf of the defendant. Lee stated that on July 23, 1977, he and the defendant went to see Travis at the funeral home. Lee intended to purchase an automobile from Travis. Lee, Travis, and the defendant had a conversation. The trial court sustained the State's hearsay objection concerning the content of the conversation.

Lee further testified that Travis and an old man went into the basement, while Lee and the defendant remained upstairs. Lee heard a shot, and he and the defendant left the funeral home. Neither he nor the defendant had a gun.

The State asked Lee whether he had been indicted for armed robbery. In a sidebar conference, the State advised the court that it had a certified copy of Lee's conviction. Lee denied that he had been convicted of armed robbery; however, the defendant's counsel subsequently stipulated to the existence of the prior conviction.

I

The defendant first argues that the trial court should have granted his motion to quash his arrest and suppress his statement and certain other evidence because the State did not present any evidence to establish a valid arrest.

In order to establish probable cause for an arrest without a warrant, the arresting officer must possess sufficient knowledge to justify a person of reasonable caution to believe that an offense has been committed by the person being arrested. The trial court's finding on this issue will not be disturbed unless it is manifestly erroneous. *People v. Borges* (1980), 88 Ill. App. 3d 912, 410 N.E.2d 1076.

■█ In the instant case Officer Jenkins testified that he saw the defendant strike his father. He further stated that several people had gathered on the corner. We believe that this evidence supports the trial court's finding that the police had probable cause to arrest the defendant for disorderly conduct. Ill. Rev. Stat. 1977, ch. 38, par. 26—1.

■█ The defendant also asserts that his detention was improper because the police failed to inform him of his right to post bail. This argument was recently rejected in *People v. Seymour* (1981), 84 Ill. 2d 24, 416 N.E.2d 1070 in which our supreme court held that the police do not have to orally advise a defendant of this right.

It is therefore unnecessary for us to address the defendant's argument that the trial court improperly excluded evidence concerning his ability to post bond.

In addition, the defendant points out that the police escorted him from the courtroom facilities to an interrogation room and questioned him concerning the Obee murder 45 minutes before he was to appear in court on the disorderly conduct charge. Such conduct, according to the defendant, was tantamount to a separate arrest for murder without probable cause.

The defendant cites *People v. Quarles* (1980), 88 Ill. App. 3d 340, 410 N.E.2d 497, in which this court held that an unlawful arrest tainted the defendant's confession. In *Quarles*, the defendant was arrested for the attempted burglary of an apartment. After interrogating the defendant, the arresting officer realized that there was no substance to the charge. Instead of releasing the defendant, the officer questioned the defendant concerning the burglary of a restaurant. Subsequently, the defendant

confessed that he had participated in that burglary. The reviewing court held that this retention in custody was an arrest without a warrant and without probable cause.

■■ The court's finding in *Quarles*, that the interrogation concerning the restaurant burglary was a separate arrest, was based on the fact that the officer had no probable cause to detain the defendant once he realized there was no substance to the attempted burglary charge. Such was not the circumstances in the instant case. As we have previously discussed, the defendant was lawfully arrested the evening of August 1, 1977. He was lawfully detained pending his court appearance the following morning. Thus, the interrogation of the defendant while he was lawfully detained did not constitute a separate arrest.

## II

The defendant also contends that the trial court erred in barring Ike Lee's testimony concerning the conversation and statements of Travis in the funeral home prior to the shooting. The defendant speculates that this testimony would somehow establish that he did not conspire with Travis to murder Obee. The defendant, however, made no offer of proof at trial as to the substance of this testimony.

■■ The purpose of an offer of proof is to indicate to the trial court, opposing counsel, and a court of review the nature and substance of the evidence expected to be offered. (*People v. Rosa* (1977), 49 Ill. App. 3d 608, 364 N.E.2d 389.) Here, the defendant did not make an offer of proof, and there is nothing in the record to indicate the substance of the testimony the defendant was attempting to introduce. Thus, we cannot consider this issue on review.

## III

The defendant next argues that the State improperly questioned Ike Lee about his prior armed robbery conviction. The defendant cites *People v. Madison* (1974), 56 Ill. 2d 476, 309 N.E.2d 11, in which our supreme court held that impeachment of the defendant should be by means of the record of conviction or by an authenticated copy. The court explained that this rule is founded upon the possibility that a defendant might be prejudiced during a jury trial if he is forced to testify concerning prior convictions.

■■ We first note that *Madison* concerned the impeachment of a defendant while the instant case involves the impeachment of a defense witness. Assuming that the *Madison* holding applies also to witnesses, we find no reversible error. As the court also stated in *Madison*, reversal is not required unless the presentation of the prior conviction by means of cross-examination deprived the defendant of substantial justice or influenced

the determination of his guilt. In view of the defendant's confession in the instant case, the error, if any, was harmless.

## IV

■■ The defendant next contends that the trial court erred in allowing Sergeant Watters and Investigator Pedersen to testify in great detail concerning the homicide investigation. The defendant argues that this testimony invited the jury to speculate on the results of the investigation. The State responds that this testimony concerning investigatory procedures was proper to explain the manner in which the police apprehended the defendant.

The defendant's failure to raise this issue in his written motion for a new trial constitutes a waiver of the issue. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Assuming there was no waiver, we believe that this testimony was competent evidence. This court has consistently held that although testimony concerning the contents of an officer's conversation with a witness is hearsay, the officer can testify to the existence of his conversation and his subsequent actions thereon. (*People v. Dunning* (1980), 88 Ill. App. 3d 706, 410 N.E.2d 1052; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) Both officers in the instant case testified only to the existence of the conversations and not to the contents thereof.

## V

Finally, the defendant contends that the trial court erred in imposing an extended term sentence. An extended term of imprisonment is authorized by statute if one of two aggravating factors are present. (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—8—2.) The first factor is a prior conviction in Illinois of the same or greater class felony within the past 10 years. The second factor is a finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—3.2(b).

■■ In the instant case the defendant was found guilty of involuntary manslaughter, a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(b)(1).) The record reveals that in 1974 the defendant was convicted of robbery, a Class 2 felony. (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(b).) Thus, pursuant to the terms of the Criminal Code, the trial court was authorized to sentence the defendant to an extended term.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.