THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY SARGENT, Defendant-Appellant.

First District (2nd Division) No. 1—86—2640*

Opinion filed June 20, 1989.

*This case was assigned to the second division on April 10, 1989.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Andrew LeFevour, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

After a jury trial, defendant was found guilty of armed robbery and sentenced to 22 years in custody of the Illinois Department of Corrections. Defendant appeals and raises as issues whether: (1) the circuit court erred in denying his request for a continuance of the trial; (2) certain remarks made by the prosecutor in closing argument denied him a fair trial; (3) he was entitled to a new sentencing hearing; and (4) his sentence should be modified.

On September 26, 1985, at about 3 a.m., Daisy Price and Ernest Walker were robbed by two men, one of whom carried a sawed-off shotgun. Defendant was subsequently arrested and charged with the armed robbery.

At trial the evidence revealed that Daisy Price and Ernest Walker left the New Ritz Hotel, located near Lake and Central in Chicago, between 2:15 and 3 a.m. on the morning of September 26, 1985. As they walked toward Walker's car, they noticed three men sitting in a small brown four-door station wagon. Walker unlocked the passenger door for Price and, as she entered the vehicle, a man rushed around from in front of the car. One man, later identified as defendant, and a second man holding a shotgun, later alleged to be Ricky Westbrook, began pushing Walker. The man with the shotgun placed it against Walker's head, walked him around the car, and made him lie on the ground. He searched Walker's pockets, taking his wallet containing $9.

As Price sat in the car with the door still open, defendant grabbed her arm and demanded "Where is your purse?" When Price denied having a purse, which was actually located on the floor of the car, defendant leaned inside the vehicle to look for himself. The armed offender then entered the car from the driver's side and pointed the shotgun in Price's face. Defendant eventually found the purse, which contained an ID, checkbook, and $300 in cash, tucked the purse under his arm, and said, "All ladies wear chains." He was unable to pull off the chain Price wore around her neck, however, but did take her watch; he then demanded her ring. Defendant could not remove the ring from Price's finger and threatened to cut it off with his knife. Defendant subsequently shouted "I've got the purse," the other man responded "Let's go" and they ran off, dropping the shotgun in the parking lot. Walker chased after the two men, but they escaped from him by jumping a fence. Price immediately flagged down a passing police car, driven by Officer Joseph Eichinger, to report the robbery.

Price recalled that during the entire incident, she saw defendant's face clearly. The car's interior dome light was on, and the location was illuminated by streetlights. She also described being "eyeball to eyeball" with defendant during the robbery. Walker claimed he caught a quick glimpse of defendant at the outset of the encounter.

Larry Daniels was the third man sitting in the car noticed earlier by Price and Walker. He testified that in the early hours of September 26, 1985, he was driving to a relative's house in his brown Hornet station wagon when he saw defendant and Ricky Westbrook on the street. The two men flagged down Daniels and asked for a ride to Lake and Central. He initially refused, but later agreed when offered $5.

Daniels dropped off his family and proceeded to the requested intersection. Westbrook, and then defendant, told Daniels they were planning to rob somebody. Daniels drove to the New Ritz Hotel and pulled into the parking lot. They saw a lady and man walking to their car; Westbrook and defendant got out of Daniels' car and ran towards them. Although he was supposed to wait for the two men, Daniels became scared, not wanting to be involved. He drove off, but his car stalled on Central directly in front of the hotel. As Daniels restarted his vehicle, police sergeant Bill Sheldon, on routine patrol, drove up and asked if there was a problem. After a brief conversation, Daniels drove away down Central; 30 seconds to 1 minute later, the sergeant received a radio call informing him of the recent robbery.

Meanwhile, as Price reported the robbery and described the car she saw earlier to Eichinger, she looked down the street and noticed Daniels' vehicle, which was slowly proceeding down Central. Eichinger pursued the vehicle, curbed it less than two blocks away, and arrested Daniels.

Daniels immediately agreed to cooperate with police. He showed them an apartment building on the 4300 block of West Van Buren, where he thought the offenders might be staying, and later named Westbrook and defendant as the perpetrators. In cross-examination, however, Daniels admitted that he initially did not name defendant and told police a conflicting version of the robbery. At approximately 5:15 that same morning, he took two officers and two detectives back to the building on Van Buren. Daniels knocked on the door of the basement apartment and identified himself; defendant answered and opened the door asking "Where the fuck you been? You booked on us." The police entered the apartment and saw defendant and four other men inside, standing around a bar, attempting to stuff money into their pockets. Daniels then told police which men were Westbrook and defendant.

The five men eventually were taken to a police station, and around 7:15 a.m. that same morning, put into a lineup. Price, upon viewing that lineup, immediately identified defendant, saying she was "absolutely positive" he was the man who robbed her. She did not identify Westbrook, however, who also was placed in the same lineup. Walker also identified defendant, but was tentative; he stated that he was not positive, but was "reasonably sure" or "almost sure" of his identification of defendant. Walker also did not recognize Westbrook in the lineup at the station. Both Walker and Price identified defendant in court.

Defendant's testimony differed from that of the foregoing State's witnesses in several details. He claimed that he met his girlfriend, Ver-

del Evans, at 4:30 p.m. the previous day, and they went to drink and gamble in the apartment at 4340 W. Van Buren. He stayed in that apartment from 5 to about 12:30 a.m. the following morning, when he left with Evans to purchase alcohol from a nearby store. He immediately returned to the apartment and continued to drink and gamble. He never left the apartment, never went anywhere with Westbrook, and never entered a car driven by Daniels. A man named Willie Stiffend answered the apartment door when Daniels knocked. The money confiscated from him by police was his, which he was using for gambling purposes. According to defendant, Verdel Evans left the apartment alone between 4 and 4:30 that morning, shortly before police arrived.

The jury found defendant guilty of two counts of armed robbery, judgment was entered on the verdict, and defendant was subsequently sentenced as previously noted, and fined $20 under the Violent Crime Victims Assistance Act (Ill. Rev. Stat., 1984 Supp., ch. 70, par. 510(b)). Defendant appeals, and asks this court to reverse his conviction, and alternatively requests that if the conviction is affirmed, the cause be remanded for a new sentencing hearing.

## I

Defendant first contends that the circuit court erred in denying his request for a continuance in order to secure the presence of an alibi witness. Following defendant's trial testimony, defense counsel intended to call Verdel Evans to corroborate the alibi; since she was not present in the court at that point in the trial, counsel asked for a continuance. As of 2:30 that afternoon, when the defense desired to call her as a witness, Evans had not yet appeared. Defense counsel stated that: Evans had been in court the two previous days, but had a traffic matter to resolve in the Maywood court earlier that morning; defendant's uncle could not locate Evans; and Evans hadn't contacted him since the previous day. The court responded: "Well, not knowing why she isn't here, the motion is denied." Counsel then replied, "At this point the defense would rest." Defendant submits this ruling denied him a fair trial.

■ In order to preserve an alleged error for review, both a trial objection and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), ___ U.S. ___, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Neal* (1985), 111 Ill. 2d 180, 196, 489 N.E.2d 845; *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223.) Defendant has waived this issue. His post-trial motion asserts 13 potential grounds

for a new trial, but does not specify the court's denial of the continuance as one of them. The only grounds asserted that are possibly related to the alleged error are contained in number 3, "The defendant was denied due process of law," and number 7, "The defendant did not receive a fair and impartial trial." Without more specificity, these allegations are too general to have alerted the circuit court to any proposed error in its ruling regarding the continuance and "stand in sharp contrast to the particularized nature" of other grounds subsequently set forth in the written motion. (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 169-70, 320 N.E.2d 462; see also *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 21, 337 N.E.2d 454.) Defendant's failure to specify this issue in his written motion for a new trial resulted in waiver.

■ Assuming *arguendo* that defendant had properly preserved the issue, there was no error. The grant or denial of a continuance rests within the sound discretion of the circuit court, and its ruling will not be disturbed on review absent a clear abuse of that discretion. (*People v. Collins* (1985), 106 Ill. 2d 237, 281, 478 N.E.2d 267.) In reviewing the exercise of the court's discretion when a continuance is sought to secure the presence of a witness, this court must consider whether: (1) defendant has demonstrated a diligent effort to have the witness present; (2) the witness' testimony is material and might affect the outcome of the case; and (3) defendant has been prejudiced in his right to a fair trial. (*People v. Timms* (1978), 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321.) In this case, it cannot be determined that the circuit court abused its discretion in denying defendant's request for a continuance; there is nothing in the record to establish what Verdel Evans' testimony would have been.[1]

■ A defendant seeking a continuance to secure the presence of a witness must make an offer of proof of that witness' proposed testimony. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 559, 366 N.E.2d 914, citing *People v. Blackman* (1966), 76 Ill. App. 2d 401, 222 N.E.2d 262 (abstract of opinion).) The purpose of such an offer is to inform the trial court, opposing counsel, and the reviewing court of the nature

---

[1]Defendant's reliance on *People v. Timms* (59 Ill. App. 3d 129) is misplaced. In *Timms*, unlike the case at bar, defense counsel knew of the unexpected last-minute events which prevented an alibi witness from appearing; his car had broken down on the way to court. Here, defense counsel had no idea where Evans was, or if in fact she was delayed by last-minute events. More importantly, in *Timms*, the defendant submitted affidavits in his motion for a new trial establishing what the prospective alibi testimony would be; here, on the other hand, this court has no way to determine what Evans' testimony would have been. Defendant here filed no affidavits nor made an offer of proof establishing Evans' proposed alibi testimony.

and substance of the testimony defendant would have introduced. (*People v. Martin* (1981), 101 Ill. App. 3d 480, 485, 428 N.E.2d 591.) Defendant correctly points out that an offer of proof is not necessary where there is a satisfactory indication to the court of the substance of the proposed testimony (*People v. Moore* (1975), 27 Ill. App. 3d 337, 344, 326 N.E.2d 420); however, the circuit court's general awareness that Evans would be offering alibi evidence is insufficient to eliminate the need for an offer of proof. As stated in *People v. Brown* (1982), 104 Ill. App. 3d 1110, 1119, 433 N.E.2d 1081: "In making an offer of proof, counsel must explicitly state what excluded testimony would reveal and not merely allude as to what might be divulged by such testimony." In the case at bar, defense counsel simply indicated that Evans was an alibi witness, and never explicitly informed the court what her testimony would reveal. Instead, he rested his case when his motion for a continuance was denied. Under the circumstances, an offer of proof was necessary, and we therefore cannot consider this issue on review. *People v. Martin*, 101 Ill. App. 3d at 485.

■ Considering the first factor outlined in *Timms*, defendant's failure to explain adequately Evans' whereabouts that afternoon defeats any claim of diligence. As to the second and third factors, this court cannot determine whether the proposed testimony was material and would have affected the outcome of the case, or whether defendant was prejudiced in his right to a fair trial. The court has no way of knowing the materiality of testimony sought to be introduced without an offer of proof, even if it is told by counsel that the proposed evidence is in the nature of corroboration of an alibi. (See *People v. Veal* (1978), 58 Ill. App. 3d 938, 978, 374 N.E.2d 963.) Certainly, testimony corroborating defendant's alibi would be material; whether it would have affected the outcome under the facts of this case is dubious. If Evans' testimony only would have corroborated collateral aspects of defendant's testimony, a continuance would have been improper. (*People v. Bryant* (1983), 115 Ill. App. 3d 215, 221, 450 N.E.2d 744.) As noted in *People v. Street* (1971), 133 Ill. App. 2d 536, 541, 273 N.E.2d 172: "[I]t is fruitless in the absence of the offer of proof to speculate upon the probable testimony of witnesses which the defense sought to place before the court ***." Defendant's suggestion that "logic dictates" Evans' testimony would corroborate defendant's alibi asks this court to engage in improper speculation. Finally, because we cannot speculate as to the nature and substance of Evans' testimony, defendant has failed to demonstrate any prejudice resulted as a result of the court's ruling. The circuit court did not abuse its discretion in denying defendant a continuance.

Defendant also argues that the prejudice to defendant from this ruling was exacerbated when the prosecutor alluded to Evans' absence in cross-examination of defendant and again in closing argument. This contention is without merit. The cross-examination of defendant occurred *before* it was known that Evans was absent. The prosecutor did not refer to Evans' absence; rather, he methodically reviewed defendant's testimony, which included inquiry into his alibi involving Evans, not mentioning her absence. This was proper cross-examination. *People v. Winston* (1982), 106 Ill. App. 3d 673, 686-87, 435 N.E.2d 1327.

■ Later, in closing argument the prosecutor commented: "Now, what corroboration of the defendant's story have we heard?" Defendant concedes that the comment was proper, but insists he was prejudiced in that it could not have been made if the court granted the continuance to allow Evans to testify. Again, since we do not know what Evans would have said in her testimony, we cannot determine whether she would have corroborated defendant's alibi. Further, the remarks cannot be construed to be a comment on defendant's failure to call Evans; the record reveals that four additional persons were mentioned by defendant who might have supported his testimony, but they were not called. The comment thus would have been proper even if Evans testified. Defendant was not prejudiced improperly by the prosecutor's reference to lack of corroboration, therefore.

## II

Defendant next claims that certain remarks by the prosecutor in closing argument improperly denied him a fair trial. Specifically, he maintains that the prosecutor: (1) improperly placed the weight of the State's Attorney's office behind the credibility of its witnesses; (2) improperly interjected his own personal opinion into the argument; (3) impermissibly enhanced the credibility of the police officers' testimony; and (4) incorrectly referred to evidence which had been excluded. Defendant concludes that even if each error alone does not warrant reversal, the cumulative impact of the statements materially prejudiced the jury.

■ A review of the record in this case discloses that defendant has waived review of the prosecutor's comments in closing argument for two reasons: First, he failed to object to any of these remarks at trial. (*People v. Neal*, 111 Ill. 2d 180, 196; *People v. Gacy* (1984), 103 Ill. 2d 1, 88-89, 468 N.E.2d 1171.) Second, he failed to raise this issue in his written motion for a new trial. (*People v. Enoch*, 122 Ill. 2d 176, 186.) In his written motion, defendant asserts the following:

"9. The assistant state's attorney made prejudicial inflamma-

tory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury thereby prejudicing the defendant's right to a fair trial." This allegation is too general to have alerted the court to any proposed error; failure to specify the alleged errors in a written motion for a new trial constitutes waiver of these issues. *People v. Witherspoon*, 33 Ill. App. 3d 12, 21.

Even if the post-trial motion was sufficient, however, the failure to make timely objections at trial resulted in waiver, since both are necessary to preserve an issue for review. (*People v. Enoch*, 122 Ill. 2d at 186.) One of the purposes behind the waiver rule is directly implicated here. Appellate counsel obviously has diligently "comb[ed] the record for every semblance of error," and has raised them without regard for whether trial counsel considered them important or not. See *People v. Caballero*, 102 Ill. 2d at 32.

■ Nor can this court consider the issue under the plain error doctrine as defendant urges (107 Ill. 2d R. 615(a)), where, as here, the evidence is neither closely balanced nor of such gravity that defendant was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250-51, 430 N.E.2d 1091; *People v. Hudson* (1985), 137 Ill. App. 3d 606, 610, 484 N.E.2d 1246; see also *People v. Yates* (1983), 98 Ill. 2d 502, 533, 456 N.E.2d 1369.) Price positively identified defendant in the lineup and in court as one of the offenders; Walker tentatively identified defendant in the lineup, and positively in court; Daniels, one of the men involved in the armed robbery, recounted the entire incident, identified defendant to police, and testified as to defendant's substantial role in the crime. These identifications of defendant were independent of each other. It cannot be said, therefore, that the jury's verdict resulted from the allegedly improper remarks. Even if improper, the comments do not constitute plain error.

■ Assuming *arguendo* that defendant properly preserved the issue, each comment has been examined. Defendant's first argument is that the prosecutor improperly placed the weight of his office behind the credibility of the State's witnesses by stating he was putting his law license on the line. In defendant's closing argument, counsel urged that certain testimony given by State's witnesses did not "come from the head, it comes from rehearsal. Each one of the witnesses was rehearsed ***." In rebuttal, the prosecutor responded that he and his colleague "wouldn't put our law licenses on the line one day to rehearse anybody." Defendant contends this last comment was improper. The State's comment in rebuttal constituted a denial that the prosecutors would be parties to such improper conduct, a response clearly in-

vited by the arguments of counsel and was not improper. *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581. See also *People v. Mays* (1979), 74 Ill. App. 3d 145, 156-57, 392 N.E.2d 106.

The cases relied on by defendant are inapposite. In *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217, and *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840, the prosecution made similar comments, but the court found they were not invited by defendant's argument and therefore were prejudicial.

■ The second comment complained of, made by the prosecutor, referred to the lineup viewed by the witness Price. According to defendant, the prosecutor improperly interjected his personal opinion into the argument when he stated that the lineup was "extremely good," claimed to have been an expression of the prosecutor's personal belief in the veracity of Price's lineup identification. It is reversible error for a prosecutor to offer his professional opinion or belief regarding the credibility of a witness. (*People v. Calderon*, 85 Ill. App. 3d at 1039.) In its context, however, the prosecutor's comment only referred to the nonsuggestiveness of the lineup, rather than Price's credibility, and did not constitute improper argument. See *People v. Williams* (1985), 137 Ill. App. 3d 736, 745, 484 N.E.2d 1191.

■ The third protested remark occurred when the prosecutor allegedly enhanced the credibility of the police officers' testimony. In argument addressed to the credibility of the various State witnesses, the prosecutor commented concerning the detectives having had 20 years' experience, who would not put their long careers on the line over defendant, which defendant concludes was improper. A police officer's testimony is to be evaluated in the same manner as that of any other witness; there is no presumption that a police officer is more credible than any other witness. (*People v. Rogers* (1988), 172 Ill. App. 3d 471, 476, 526 N.E.2d 655; *People v. Ford* (1983), 113 Ill. App. 3d 659, 662, 447 N.E.2d 564.) The cases are in conflict, however, whether it is proper argument to comment that police officers would not jeopardize their careers by testifying falsely against a defendant. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 548, 464 N.E.2d 659, comparing *People v. Parker* (1979), 72 Ill. App. 3d 679, 391 N.E.2d 89 (improper), with *People v. Mayfield* (1979), 72 Ill. App. 3d 669, 390 N.E.2d 1315 (proper).) Even if the comment was improper, any error was harmless, since, as noted above, the evidence of defendant's guilt was overwhelming and the complained-of remark could not have been a material factor in his conviction. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 525, 475 N.E.2d 945.) We note that the prosecutor made only one

such comment and did not engage in repeated improper argument in this area. (See, *e.g.*, *People v. Rogers*, 172 Ill. App. 3d at 476-77.) Additionally, the important testimony of the police officers was corroborated by other witnesses.

 The fourth alleged improper comment is identified by defendant as a reference to evidence that was excluded by the court. Defendant argues that the prosecutor improperly commented on why Ricky Westbrook, purportedly the man wielding the shotgun during the robbery, was not prosecuted. During the cross-examination of Officer Eichinger, defense counsel attempted to ask what happened to Westbrook after he was arrested. The State objected, and a sidebar was held. The court eventually ruled that such inquiry by defense counsel was irrelevant to defendant's participation in the robbery. Later, in rebuttal argument, the prosecutor responded to what he considered unwarranted speculation by defense counsel that the lineup at police headquarters was suggestive. Our examination of the record reveals that defendant appears to have misinterpreted the State's mention of Westbrook. The comment was made in response to defense counsel's argument that the lineup was suggestive; indeed, defendant's brief admits that his counsel mentioned Westbrook with reference to the credibility of the witnesses' lineup identifications. In rebuttal, the prosecutor attempted to counter any inference that the police "framed" defendant. The fact that Westbrook was in the lineup, but not identified, only remotely relates to why he was not prosecuted in this case. Viewed in its entire context, the reference to Westbrook was not a comment upon evidence which had been excluded, but was a response to the inference that the police were setting up defendant through the use of a suggestive lineup.

 In sum, pretermitting waiver, even if improper, the remarks could not have been a material factor in defendant's conviction given the compelling evidence of guilt, and the verdict would not have been different absent those comments. See *People v. Faysom*, 131 Ill. App. 3d at 525.

### III

Defendant next contends he is entitled to a new sentencing hearing because the circuit court did not consider a current presentence investigative report. He claims that because the court considered a report that was eight months old, the presentence investigation failed to reflect significant information (such as whether he sought rehabilitation or treatment for his drug problem); he concludes, therefore, that the report failed to meet the statutory standards. Ill. Rev. Stat. 1985,

ch. 38, par. 1005—3—2.

In sentencing defendant on September 11, 1986, the court relied on a presentence report filed approximately seven months earlier, on February 10, 1986. At the sentencing hearing defense counsel advised the court that he reviewed the presentence investigation, waived the three-day period, and suggested that one entry was inaccurate, an indication that defendant was convicted of the possession charge, which he believed was "nolled" at trial. After the possession charge was corrected, the following colloquy took place:

"THE COURT: All right. *No changes, no corrections?*

MR. BRENNOCK (Defense counsel): *No.*

MR. MORASK (Prosecutor): No, your Honor.

THE COURT: Any testimony, the pre-sentence investigation will be made part of the record unless there is any objection.

MR. BRENNOCK: *No objection.*

MR. MORASK: We have no objection, Judge." (Emphasis added).

The hearing then proceeded, and defendant was subsequently sentenced.

▇ It is the duty of the parties to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in a presentence investigative report. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9. See also *People v. Laramore* (1987), 163 Ill. App. 3d 783, 793, 516 N.E.2d 401; *People v. Gornick* (1982), 107 Ill. App. 3d 505, 515, 437 N.E.2d 892.) Here, as in *Gornick*, "[a]ny purported deficiency in the presentence report with respect to its lack of current information was waived by defendant's failure to object." (107 Ill. App. 3d at 515; see also *People v. Moore* (1983), 115 Ill. App. 3d 266, 271, 450 N.E.2d 855.) Additionally, presentence reports prepared 10 months (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892) and 14 months (*People v. Stahlman* (1982), 103 Ill. App. 3d 402, 431 N.E.2d 694) prior to sentencing were found acceptable, and any errors were waived by each defendant's failure to object to their alleged deficiencies.

Defendant nevertheless argues that the statutory requirements for presentence reports are legislative, and not a personal right of defendant, and thus could not be waived. Defendant's reliance on *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, and *People v. Lynch* (1984), 122 Ill. App. 3d 121, 460 N.E.2d 817, in support of his argument, is misplaced. In *Youngbey* and *Lynch*, no report was filed; in *Harris*, no original presentence report was filed, and an "updated" report, prepared

for a sentencing hearing after revocation of probation, "fell so far short of satisfying the statutory requirements as to render it totally inadequate." (*Harris*, 105 Ill. 2d at 301.) Here, unlike these cases, a full report was submitted and considered by the court.

■ Defendant confuses a waiver of the *preparation* of a presentence report, which will not be permitted, with a waiver of any objections to *deficiencies* in a report based on its staleness. In the case before us, defense counsel made one correction, then explicitly approved of the presentence report; defendant cannot maintain on appeal that use of the report was error. *People v. Moore*, 115 Ill. App. 3d at 271.

## IV

■ Defendant lastly contends, and the State concedes, that his sentence must be modified to reflect full credit against the $20 fine imposed under the Violent Crime Victims Assistance Act. (Ill. Rev. Stat., 1984 Supp., ch. 70, par. 510(b).) Section 110—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 110—14) provides for a credit of $5 for each day of incarceration against any fine levied on conviction upon application of the defendant. Recently, the Illinois Supreme Court concluded that this monetary credit is available to defendants fined pursuant to the Violent Crimes Assistance Act who were convicted prior to the effective date of the amendment denying the credit.[2] (*People v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879.) Defendant, incarcerated almost one year between the day of his arrest and the date he was sentenced, is entitled to have his sentence modified to reflect a full credit against the $20 fine.

From the foregoing analysis we are compelled to affirm defendant's conviction. His sentence will be modified to reflect full credit against the $20 fine imposed.

Judgment affirmed.

BILANDIC, P.J., and DiVITO, J., concur.

---

[2]The Act was subsequently amended, so that effective January 1, 1986, fines imposed under this section were explicitly exempt from the operation of the $5-per-day credit provision of the Code of Criminal Procedure. Ill. Rev. Stat. 1985, ch. 70, par. 510(b).